IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELIZABETH G.,[1]                              1:19-cv-00054-BR

       Plaintiff,                         OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

       Defendant.

**MARLENE R. YESQUEN**
2 North Oakdale Avenue
Medford, OR 97501
(541) 816-4888

       Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

    [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**KATHERINE B. WATSON**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2139

      Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Elizabeth G. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Child Insurance Benefits (CIB) under Title II of the Social Security Act.

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for CIB on August 12, 2014, alleging a disability onset date of September 21, 1987. Tr. 113.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on May 3, 2017, and a second hearing on October 3, 2017. Tr. 58-93, 94-99.  Plaintiff appeared without her attorney at the

---

      [1] Citations to the official transcript of record filed by the Commissioner on June 17, 2019, are referred to as "Tr."

first hearing and with her attorney at the second hearing. Plaintiff, Plaintiff's mother, and a vocational expert (VE) testified at the second hearing.

The ALJ issued a decision on November 8, 2017, in which he found Plaintiff was not disabled before she was 22 years old and, therefore, is not entitled to benefits. Tr. 23-38. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on November 13, 2018, when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on September 21, 1987; was 29 years old at the time of the first hearing; and was 30 years old at the time of the second hearing. Tr. 113. Plaintiff has a college degree. Tr. 66. The ALJ found Plaintiff does not have any past relevant work experience. Tr. 51.

Plaintiff alleges disability during the relevant period due to "cognitive disorder; right frontal ventriculostomy; expressive language disorder; visual processing disorder; history of seizure disorder; one episode of status epilepsy; visual spacial disorder; [and] auditory processing disorder." Tr. 114.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 47-49.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9ᵗʰ Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9ᵗʰ Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9ᵗʰ Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9ᵗʰ Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9ᵗʰ Cir. 2006).

## **DISABILITY ANALYSIS**

### I.    **The Regulatory Sequential Evaluation**

For an claimant to be entitled to child insurance benefit, she must establish she "is under a disability [as defined within the meaning of the Social Security Act] which began before [s]he attained the age of 22."  42 U.S.C.A. § 402(d)(1).

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite her limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity (SGA) since her September 21, 1987, alleged onset date. Tr. 41.

At Step Two the ALJ found Plaintiff had the severe impairments of hydrocephalus with shunt placement, history of seizures, autistic disorder, nonverbal learning disorder, math learning disorder, communication disorder, attention-deficit hyperactivity disorder (ADHD), and a cognitive disorder during the relevant period. Tr. 42. The ALJ found Plaintiff's developmental-coordination disorder for fine and gross motor skills was not a severe impairment during the relevant period. Tr. 42.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 26. The ALJ found Plaintiff had the RFC to perform "a full range of work at all exertional levels" with the following limitations during the relevant period: Plaintiff could never climb ladders, ropes, or scaffolds or "work around hazards, such as dangerous machinery and unprotected heights"; could "understand, remember, and carry out only short, simple, repetitive job instructions consistent with unskilled work and a Dictionary of Occupational Titles (DOT)

GED general reasoning level of 2 or less"; "was limited to work that required little or no math"; and could not interact with the public.  The ALJ also found Plaintiff required during the relevant period "a static work environment with few changes in work routines and settings . . . [and] that did not require much communication between coworkers, such as in a team type of setting."  Tr. 44.

At Step Four the ALJ found Plaintiff did not have any past relevant work during the relevant period.  Tr. 50.

At Step Five the ALJ found Plaintiff could have performed other work that existed in the national economy during the relevant period.  Accordingly, the ALJ concluded Plaintiff was not disabled before she was age 22.  Tr. 51.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found at Step Two that Plaintiff's developmental-coordination disorder was not a severe impairment; (2) partially rejected Plaintiff's testimony; and (3) gave "some weight" to the opinion of examining psychologist Douglas Col, Ph.D., gave "no weight" to the opinion of treating physician Barbara Sibley, M.D., and did not address limitations found by examining psychologist Cynthia Arnold, Ph.D. Plaintiff also alleges the Appeals Council erred when it found the additional evidence Plaintiff submitted to the Appeals

Council "did not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

**I.   The ALJ did not err at Step Two.**

Plaintiff contends the ALJ erred at Step Two when he found Plaintiff's developmental-coordination disorder was not severe during the relevant period.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), (b). Plaintiff has the burden at Step Two to establish the existence of a severe impairment and to show any error by the ALJ is harmful.

Examining occupational therapist Rebecca Good noted in a July 2017 examination that Plaintiff had "good function in bed mobility, sitting balance, ambulation and climbing stairs, arm movement, and dexterity for finger to thumb opposition and picking up common objects such as a comb or pen." Tr. 572. Good, however, also noted Plaintiff had some impairments in grip

strength, alternating movements, and hand coordination, which
would "interfere with performance of high level functional
tasks." Tr. 572. Good stated Plaintiff had "mild deficits" that
would "interfere with high level dexterity tasks." Tr. 572. The
record, however, does not reflect any opinion by a medical or
nonmedical treating source that indicates the limitations noted
by Good "significantly limited [Plaintiff's] physical or mental
ability to do basic work activities" before she was 22 years old.

In addition, the Ninth Circuit has held when the ALJ has
resolved Step Two in a claimant's favor, any error in designating
specific impairments as severe at Step Two does not prejudice a
claimant if the ALJ considered the impairments when formulating
his assessment of Plaintiff's RFC. *Burch v. Barnhart*, 400 F.3d
676, 682 (9th Cir. 2005)(any error in omitting an impairment from
the severe impairments identified at Step Two was harmless when
Step Two was resolved in claimant's favor). *See also Buck v.
Berryhill*, No. 14-35976, 2017 WL 3862450, at *5 (9th Cir. 2017)
("[S]tep two was decided in [the plaintiff's] favor after both
hearings. He could not possibly have been prejudiced. Any
alleged error is therefore harmless and cannot be the basis for a
remand.")(citation omitted)). Here, as noted, the ALJ resolved
Step Two in Plaintiff's favor.

On this record the Court concludes the ALJ did not err when
he failed to find at Step Two that Plaintiff's developmental-

coordination disorder was a severe impairment during the relevant period.

## II. The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the second hearing that she was unable to work full-time because of "the kind of social interaction that [she] would have to do to work full time." Tr. 66. Plaintiff also noted she had trouble taking tests in college unless she could take them in a room by herself because she was easily distracted by other test-takers. Tr. 70. Plaintiff stated it takes her a long time to learn a new process, and, therefore, "it's easiest . . . if the instructions are written down and . . . [she] can go over them a few times." Tr. 71. Plaintiff testified she looks down while talking to others and she has great difficulty initiating casual conversations even though she does not have much difficulty when initiating conversations "to ask for help or something . . . specific like that." Tr. 75-76. Plaintiff stated it took her longer than "most people" to complete college writing assignments, but she is an avid reader and proofread two of her sister's manuscripts.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [Plaintiff's] alleged symptoms" during the relevant period, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 46. Specifically, the ALJ noted Plaintiff had excelled in

college and graduated with a Bachelor's degree in history from
Southern Oregon University. Plaintiff also successfully
participated in a work-study program while she was attending
college. Plaintiff lived alone and was able to maintain her
personal hygiene, to perform household chores, to manage her
finances, to use public transportation, and to care for pets.
Plaintiff also read extensively, used the computer, studied with
other students when she was in school, worked out, traveled, and
proofread two of her sister's manuscripts.

The Court finds on this record that the ALJ did not err when
he partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of her symptoms
during the relevant period.

### III. The ALJ did not err in his evaluation of the opinions of Plaintiff's examining psychologists and treating physician.

Plaintiff alleges the ALJ erred when he gave only "some
weight" to the opinion of examining psychologist Dr. Col, gave
"no weight" to the opinion of treating physician Dr. Sibley, and
failed to address limitations assessed by examining psychologist
Dr. Arnold.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record." *Thomas v.*

*Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

## A.    Dr. Col

On February 18, 2008, Dr. Col conducted a psychodiagnostic evaluation of Plaintiff and found Plaintiff had a "highly variable" performance on a number of tests. For example, on the Wechsler Adult Intelligence Scale (WAIS-III) Plaintiff had a Verbal IQ (VIQ) in the High Average range and a Performance IQ (PIQ) in the Borderline range. Dr. Col noted Plaintiff's Average Full Scale IQ was "basically a meaningless number" due to "the enormous 42-point difference between her VIQ and PIQ." Tr. 414. Similarly, Plaintiff's Verbal Comprehension Index (VCI) score was in the Very Superior range, but her Processing Speed Index (PSI) score was in the Extremely Low range. Plaintiff's Working Memory Index (WMI) score was in the middle of the Average range, but her Perceptual Organization Index (POI) "was on the dividing line between the Borderline and Low Average ranges." Tr. 414. Dr. Col concluded:

> Because of these high levels of variability, [Plaintiff's] WAIS III scores could not be taken as any kind of valid measure of her intelligence *per se.* However, they could be interpreted as indicating extraordinarily good auditory/verbal

> functioning, but some significant difficulties
> with visuospatial functioning.

Tr. 414.  Dr. Col also administered the Wechsler Individual

Achievement Test (WIAT-II) on which Plaintiff's scores "showed

even more variability . . . than she had on the WAIS-III."

Tr. 414.  For example, Plaintiff did "very well on all of the

receptive language subtests of the WIAT-II, and all of her

Reading and Listening Comprehension scores were in the High

Average to Superior ranges."  Tr. 414.  Plaintiff, however, "did

extraordinarily poorly on the WIAT-II expressive language tests,

with an Oral Expression score that was in the lower half of the

Borderline range and a Written Expression score that was

extremely low-essentially below any range."  Tr. 414.

Plaintiff's WIAT-II Mathematics scores "were in between the

extremes of her expressive and receptive language skills, with a

Mathematics Composite score that was in the Low Average range."

Dr. Col concluded "[i]n light of the 40-point difference between

her Reading and Mathematics Composite scores, and the 29-point

difference between her WAIS.III Verbal IQ and WIAT-II Mathematics

Composite scores, it would appear that she does have some kind of

a mathematics disability."  Tr. 414.  Ultimately Dr. Col

concluded Plaintiff

> has some serious neurocognitive deficits that have
> not been adequately evaluated or addressed.  She
> has serious visual processing deficits, as well as
> significant problems with visuospatial memory.
> She also has some serious problems with expressive

language, both written and oral, and appears to be impaired in her ability to do mathematics.

Tr. 418. Dr. Col recommended "[a]t the very least Plaintiff should be given more time for the mathematics test and because of the severity of her expressive language difficulties the writing portion of the GED might have to be waived altogether." Tr. 419. Dr. Col concluded Plaintiff "may not be able either to gain or to sustain meaningful employment" because of "the combination of her serious visual, motor, and expressive language impairments, along with significant executive function and visuospatial memory deficits." Tr. 419.

As noted, the ALJ gave "some weight" to Dr. Col's opinion. The ALJ noted Dr. Col's opinion as to Plaintiff's need for "increased time for math tests [was] generally consistent with the objective findings of [his] evaluation, [but] it does not address work place functioning." In addition, the ALJ found Dr. Col's opinion that the "writing portion of the GED might have to be waived altogether" for Plaintiff was "inconsistent with the record as a whole, including [Plaintiff's] subsequent passing score on the writing portion of the GED, her high GPA in college courses, and her ultimate achievement of a Bachelor's degree in history." Tr. 47. Finally, the ALJ rejected Dr. Col's opinion that Plaintiff "may not be able either to gain or to sustain meaningful employment" on the ground that it was unsupported by the record. Specifically, the ALJ noted Plaintiff successfully

17 - OPINION AND ORDER

engaged in a work-study job while attending college, receiving high marks, living alone, and caring for herself.

On this record the Court concludes the ALJ did not err when he partially rejected Dr. Col's opinion because the ALJ provided specific and legitimate reasons for doing so based on substantial evidence in the record.

**B.    Dr. Sibley**

On May 3, 2011, Plaintiff's treating physician Dr. Sibley wrote a letter stating Plaintiff qualified for an Oregon Tax Credit as a severely disabled adult.  Dr. Sibley noted Plaintiff has a "profound nonverbal learning disability with severe expressive language disorder."  Tr. 557.  Dr. Sibley noted Plaintiff "is unable to live on her own, . . . cannot maintain a household, . . . cannot earn a living[,] has never been able to hold down a job nor can she get transportation for herself[, and] basically lives under the constant care of her family."  Tr. 557.

The ALJ did not give any weight to Dr. Sibley's opinion because it was inconsistent with the record.  Specifically, the ALJ noted Plaintiff lived away from home while attending college and she lived alone in a cottage on her parents' property at the time of the hearing.  In addition, Plaintiff independently "engages in self-care and other daily activities" including cooking specialized vegan meals, leaving home unaccompanied, and independently using public transportation.  Plaintiff graduated

from college with honors while successfully working at a work-study job. In addition, the ALJ noted Dr. Sibley provided her opinion in the context of an Oregon State tax credit. The Social Security Administration and the Oregon Department of Revenue, however, apply different standards to determine disability.

On this record the Court concludes the ALJ did not err when he rejected Dr. Sibley's opinion because the ALJ provided specific and legitimate reasons for doing so based on substantial evidence in the record.

## C. Dr. Arnold

In June 2017 Dr. Arnold conducted a psychological evaluation of Plaintiff and she noted Plaintiff achieved widely disparate scores on the Wechsler Adult Intelligence Scale (WAIS-IV). For example, Plaintiff's verbal comprehension score was in the extremely high range, her perceptual reasoning score was in the low average range, her working memory score was in the average range, and her processing speed score was in the very low range. Tr. 562-63. Dr. Arnold noted Plaintiff had "difficulties" with written expression, mastering number sense, and mathematical reasoning and, therefore, had a significant learning disability in math. Dr. Arnold also noted Plaintiff has "tremendous difficulty making eye contact," needs time to make transitions, and is rigid about changes in routine. Tr. 564-65. Ultimately Dr. Arnold diagnosed Plaintiff with autistic disorder,

nonverbal-learning disorder, math-learning disorder, communication disorder, ADHD, and developmental-coordination disorder. Dr. Arnold, however, did not identify any specific functional limitations associated with her diagnoses.

Plaintiff asserts the ALJ erred when he did not "address any of the limitations and the approximately seven severe medical diagnoses found by . . . Dr. Cynthia Arnold." Pl.'s Brief at 17. The ALJ, however, found at Step Two that during the relevant period Plaintiff suffered from autistic disorder, nonverbal learning disorder, math learning disorder, communication disorder, ADHD, and a cognitive disorder. As noted, Dr. Arnold did not identify any functional limitations associated with her diagnoses and diagnoses alone are insufficient to establish a claimant's functional limitations. *See* 20 C.F.R. § 404.1521.

On this record the Court concludes the ALJ did not err when he did not address the medical diagnoses of Dr. Arnold because Dr. Arnold did not attribute any functional limitations associated with those diagnoses.

**II. The Appeals Council did not err when it found Dr. Arnold's November 28, 2017, Function Questionnaire did not have a reasonable probability of changing the outcome of the ALJ's decision.**

Plaintiff contends the Appeals Council erred when it found Dr. Arnold's November 28, 2017, Function Questionnaire did not have a reasonable probability of changing the outcome of the

ALJ's decision.

After the ALJ issued his decision Plaintiff submitted to the Appeals Council a Function Questionnaire completed by Dr. Arnold based on her June 2017 psychological evaluation of Plaintiff. Dr. Arnold stated Plaintiff has marked limitations in her ability to understand, to remember and to carry out simple one- or two-step instructions; to understand, to remember, and to carry out "detailed but uninvolved written and oral instructions"; and to respond appropriately to changes in the work setting. Tr. 13. Dr. Arnold also stated Plaintiff has extreme limitations in her ability to "sustain ordinary routine without special supervision," to accept instructions, and to respond appropriately to criticism from supervisors. Tr. 13. Dr. Arnold expected Plaintiff would "need to take unscheduled breaks from even a simple, routine job, outside of a standard morning, lunch, and afternoon break due to exacerbations of [her] mental health symptoms" and would miss 16 hours or more per month of work because of her impairments. Tr. 14.

The Appeals Council considered Dr. Arnold's opinion and concluded it "did not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

The Ninth Circuit has held when the Appeals Council considers new evidence in deciding whether to review an ALJ's decision, that evidence becomes part of the Administrative Record

and the Court must consider it together with the record as a whole when reviewing the ALJ's decision. *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007) (when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."). "If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then remand is appropriate to allow the ALJ to consider the evidence." *McQueen v. Berryhill*, No. 2:18-CV-00511 AC, 2019 WL 1923232, at *5 (E.D. Cal. Apr. 30, 2019) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

When the ALJ assessed Plaintiff's RFC and concluded Plaintiff could perform other work in the national economy, the ALJ took into account a number of Plaintiff's limitations noted by Dr. Arnold in his November 2017 opinion. For example, as noted, the ALJ limited Plaintiff to work that required only the ability to understand, to remember, and to carry out short, simple repetitive instructions consistent with unskilled work. The ALJ limited Plaintiff to work that did not require any math,

interactions with the public, changes in work routines and settings, or "much communication between coworkers." Tr. 44. The ALJ concluded Plaintiff could perform work as a bagger, "hand stuffer," and cleaner. At the second hearing the VE explained the bagger job "is not to be confused with a courtesy clerk at a market. It is instead a bench work type of job where you're placing small items into bags." Tr. 88. The VE explained these jobs are not ones "where an individual would interface with the public, nor are they teamwork jobs as an individual might find in regard to say assemble work where you're relying on the person to the left or the right of you," *i.e.*, each of these jobs is "very repetitive and routine" and do not involve changes in work routine, environment, or job tasks. Tr. 91.

Dr. Arnold's opinion that Plaintiff has marked limitations in her ability to understand, to remember and to carry out simple one- or two-step instructions, to "sustain ordinary routine without special supervision," to accept instructions, and to respond appropriately to criticism from supervisors is unsupported by the record. As the ALJ noted when he addressed Dr. Col's opinion that Plaintiff "may not be able either to gain or to sustain meaningful employment," Plaintiff successfully engaged in a work-study job while attending college, receiving high marks, living alone, and caring for herself.

Finally, there is not any indication in the record or in

Dr. Arnold's psychological evaluation that Plaintiff's impairments would require her to take frequent breaks outside of the usual morning, lunch, and afternoon breaks or that Plaintiff would miss two or more work days per month due to her symptoms.

On this record the Court concludes Dr. Arnold's November 2017 opinion does not "create[] a reasonable possibility of a different outcome." *McQueen*, 2019 WL 1923232, at *6.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this _11th_ day of January, 2020.


_____
ANNA J. BROWN
United States Senior District Judge